**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deirdre Meldrum, | No. CV-20-02165-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Board of Regents, et al., | |
| Defendants. | |

Pending before the Court is Defendants Arizona Board of Regents ("ABOR"), Michael Crow, Robert Page, Mark Searle, Barry Graham Ritchie, Sethuraman Panchanathan, Joshua LaBaer, and Tamara Deuser's (collectively, "ASU Defendants") Motion to Dismiss.  (Doc. 12.)  Also before the Court is Defendants Rick Shangraw, Jr., Augustine Cheng, and Arizona Science and Technology Enterprises LLC's (now known as Skysong Innovations, LLC) ("AzTE/Skysong") (collectively, "AzTE/Skysong Defendants") Motion to Dismiss.  (Doc. 13.)  For the following reasons, both motions are granted in part and denied in part.[1]

## BACKGROUND

Plaintiff Deirdre Meldrum ("Plaintiff") is a professor at Arizona State University

---

[1] Plaintiff requested oral argument.  That request is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision.  *See Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

("ASU").  (Doc. 1-3 at 6 ¶ 3.)  Defendant Michael Crow, President of ASU, recruited Plaintiff in 2005.  *Id.* ¶ 18.  Plaintiff alleges Crow made several promises to induce her to accept a position at ASU as a Dean.  *Id.* ¶ 19.  Those promises were eventually set forth in Plaintiff's 2006 offer letter and commitment of resources ("Outline of Resources").  *Id.* ¶¶ 19, 21.  After working for several years as a Dean, ASU demoted Plaintiff to the role of Senior Scientist.  *Id.* ¶ 26.  During her transition from Dean to Senior Scientist in 2010, Plaintiff alleges that Provost Capaldi Phillips renewed the promises Crow made to her when she was recruited.  *Id.* ¶ 27.

While working for ASU, Plaintiff became increasingly concerned about "mismanagement and potential waste of funds at ASU."  *Id.* ¶ 32.  On June 12, 2014, Plaintiff served a letter (the "Letter") on the Governor of Arizona and the Arizona Attorney General and sent copies of the Letter to other individuals at ASU and ABOR.  *Id.* ¶ 47. The Letter raised several issues about ASU's practices.  *Id.* ¶¶ 47–48.  Plaintiff later served a second version of the Letter, which contained a summary about other individuals whom, she alleges, were "lured to ASU with unfulfilled promises."  *Id.* ¶ 50.

Plaintiff asserts that several ASU employees took actions against her following service of the Letter.  Those employees include Defendant Crow, Robert E. Page, Mark Searle, Barry Graham Ritchie, Sethuraman Panchanathan, Joshua LaBaer, and Tamara Deuser.  Plaintiff also asserts that Defendants R.F. Shangraw, Jr. and Augustine Cheng took actions against her.  Shangraw and Cheng work for Defendant AzTE/Skysong, which is the exclusive intellectual property management and technology transfer organization for ASU.  *Id.*  ¶ 14.

Plaintiff filed suit in Maricopa County Superior Court on September 28, 2020.  The Complaint asserts the following causes of action: Declaratory Relief A.R.S. § 12-1831 ("Count I"); Breach of Contract ("Count II"); Breach of Implied Covenant of Good Faith and Fair Dealing ("Count III"); Intentional and Negligent Misrepresentation ("Count IV"); Unjust Enrichment ("Count V"); Promissory Estoppel ("Count VI"); Whistleblowing Retaliation in Violation of Public Policy ("Count VII"); Tortious Interference with

1   Employment Relationship ("Count VIII"); Violations of the Arizona Wage Act ("Count

2   IX"); Violations of the First Amendment (Right to Free Speech) ("Count X"); Violations

3   of the First Amendment (Petition to Redress Grievances) ("Count XI"); Violation of Title

4   IX ("Count XII"); and Violation of Arizona Public Records Laws ("Count XIII").

5   Defendants removed the case to this Court on November 10, 2020.  The ASU Defendants

6   and AzTE/Skysong Defendants now move to dismiss the Complaint.

## DISCUSSION

### I.   Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the
elements of a cause of action"; it must contain factual allegations sufficient to "raise the
right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  When analyzing a complaint
for failure to state a claim, "allegations of material fact are taken as true and construed in
the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217
(9th Cir. 1996).  However, legal conclusions couched as factual allegations are not given a
presumption of truthfulness, and "conclusory allegations of law and unwarranted
inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d
696, 699 (9th Cir. 1998).

### II.   Analysis[2]

#### a.   Counts I-III, VI

##### 1.   Institutional Funding and Research Space

---

[2]   The ASU Defendants assert that, as to ABOR, Crow, Page, Searle, Ritchie, and
Panchanathan, Plaintiff's state law claims are time barred to the extent they are based on
facts occurring prior to March 1, 2015 and federal law claims are barred to the extent they
are based on facts prior to March 1, 2014.  (Doc. 12 at 5.)  As to LaBaer and Deuser, the
ASU Defendants argue that those defendants cannot be held liable for actions that occurred
before September 28, 2019 on the state law claims and before September 28, 2018 on the
federal law claims.  *Id.* at 6.  Plaintiff does not dispute that these limitations periods apply.
The claims that are not dismissed on the merits all sufficiently rest on factual allegations
that occurred within the parties agreed-upon limitations period.  Accordingly, without
deciding that the assented statutory period is proper, the statute of limitations does not bar
the remaining claims.

The Outline of Resources contained several promises, including that Plaintiff would be "a center director in the Biodesign Institute with 5,000 square feet of lab space in Biodesign, your research office, and 10 office/desk spaces." (Doc. 12-1 at 4.)  Plaintiff alleges that Crow "repeatedly reassured Plaintiff that these resources would be made available to Plaintiff and did not suggest to Plaintiff that these resources were limited in duration or could be modified or terminated during her tenure without her agreement or consent." (Doc. 1-3 at 17 ¶ 22.)  Plaintiff alleges ASU breached the promises in the Outline of Resources in several ways, such as by reducing Plaintiff's lab space beginning in May 2016.  *Id.* ¶ 92.  Drawing all reasonable inferences in favor of Plaintiff, Plaintiff plausibly alleges that ABOR breached her employment contract by reducing her institutional funding and research space.

Contrary to the ASU Defendants' assertions, Plaintiff's correspondence with Provost Phillips does not prove lack of breach.  Prior to accepting her terms of employment as Senior Scientist in 2010, Plaintiff asked Provost Capaldi what promises from the Outline of Resources would remain in force in her new role.  *Id.* ¶27.  Provost Phillips stated that ASU would continue to support items 3 and 4 in the Outline of Resources, subject to a review on a five-year schedule, and that all other commitments would "remain as agreed to previously." (Doc. 12-1 at 4.)  The promise about Plaintiff's lab space, for instance, is listed as Item 5 in the Outline of Resources.  (*Id.* at 4.)  Accordingly, Plaintiff's correspondence with Provost Phillips does not indicate that her lab space was subject to modification.  Additionally, the ABOR policies regarding evaluation procedures do not indicate that the promises in the Outline of Resources were limited in duration or subject to modification.  *See* (Doc. 12 at 7.)  Accordingly, Plaintiff may base her contract claims on her allegations regarding institutional funding and research space.

## 2. Non-Renewal of Administrative Appointments

The ASU Defendants assert that Plaintiff cannot base her contract claims on the non-renewal of her appointment as Senior Scientist and her removal as a Biodesign Director because ABOR policies provide that administrative appointments may be

terminated "at any time without cause or explanation."  *Id.* at 8.  Plaintiff does not address this argument in her response, and she apparently concedes that her contract incorporated ABOR policies and it is appropriate to consider them on a motion to dismiss.  Accordingly, Counts I-III and VI are dismissed to the extent that they are based on non-renewal of her administrative appointments.

### 3.  Teaching Assignments

The Outline of Resources promised that Plaintiff would "not have required teaching." (Doc. 12-1 at 4.)  Plaintiff alleges ABOR breached this promise when Director Phillips informed Plaintiff in 2015 that she had to teach two classes.  (Doc. 1-3 at 34 ¶ 82.)

It is plausible that this promise is still enforceable, even though Plaintiff is no longer a Dean.  As previously discussed, Provost Phillips confirmed that certain commitments in the Outline of Resources, including the promise about teaching requirements, would "remain as agreed to previously" in Plaintiff's new role as Senior Scientist.  (Doc. 12-2 at 3.)  Additionally, ABOR Policy 6-201(G) does not prohibit ASU from making such a promise.  (Doc. 12-15.)  Accordingly, Counts I-III and VI remain to the extent they are based on her teaching assignments.

### 4.  Sabbatical

The Outline of Resources also provided that "[w]hen you have the college such that you can take leave, you are authorized for a sabbatical." (Doc. 12-1 at 4.)  Plaintiff further alleges in her complaint that "Plaintiff's sabbatical leave was approved by Defendant Crow for use in conjunction with her deanship in the College of Engineering which ended December 31, 2010." (Doc. 1-3 at 37 ¶ 95).  In 2017, Plaintiff advised her academic unit that she intended to take her "pre-approved sabbatical" beginning in Fall 2017.  (*Id.* ¶ 95.) Director Phillips notified Plaintiff that her sabbatical was denied, which Plaintiff alleges is "contrary to the terms of [her] employment contract which made the granting of her sabbatical non-discretionary. *Id.* ¶ 96.  Dean Squires later reversed this denial and approved Plaintiff's sabbatical for Spring 2018.  *Id.* at 38 ¶ 101.

Plaintiff does not respond to the ASU Defendants' argument that ASU's sabbatical

policies require persons eligible for a sabbatical to submit a proposal for approval.  (Doc. 12 at 9.)  Nor does she explain how the right to choose the specific period of her sabbatical which was expressly designed in conjunction with her deanship, survived its termination. Instead, Plaintiff asserts that ASU's interference with her sabbatical is a breach of the implied covenant of good faith and fair dealing.

A party breaches the covenant "by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 77, 375 P.3d 1173, 1186 (Ct. App. 2016) (quoting *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, 46 P.3d 431, 435 (Ct. App. 2002)).  Plaintiff alleges that the purpose of her sabbatical was to "pursue scientific research to de-risk certain inventions and intellectual property."  (Doc. 1-3 at 49 ¶ 131.)  Plaintiff alleges that several of the ASU Defendants interfered with her ability to conduct her sabbatical project.  *Id.* ¶ 143.  For instance, Plaintiff alleges that, during relocation of her lab space in Spring 2018, "Defendants . . . engage[d] in delay tactics, or, alternatively, failed to take all reasonable and necessary means" to relocate her lab in a prompt manner.  *Id.* ¶ 143(j).  Plaintiff asserts that this interference delayed her sabbatical for three months and "irreparably damaged" her research projects.  *Id.* ¶ 144.  Taken together, Plaintiff plausibly alleges breach of the implied covenant of good faith and fair dealing.  As Plaintiff appears to only defend her covenant claim, Counts I, II, and VI are dismissed to the extent they are based on Plaintiff's sabbatical.

### 5. Named Professorship

Finally, Plaintiff's 2006 offer letter promised "a named professorship."  *Id.* ¶ 21.  A named professorship is important for several reasons, including for recognition, credibility, and the ability to secure research grants.  *Id.* ¶ 177.  Plaintiff alleges that she repeatedly requested her named professorship, as promised, but that the ASU Defendants continued to state that the named professorship was "forthcoming."  *Id.* ¶ 178.  Plaintiff further asserts

that "Defendants continued to unreasonably and unjustifiably delay and stonewall in fulfilling" this promise. *Id.* Relying on the reassurances that the named professorship was forthcoming, Plaintiff took no affirmative action, other than repeatedly raising the issue. *Id.* ¶ 179.

In June 2016, Dean Squires informed Plaintiff that she would receive a "generic, non-descriptive name, 'Professor of Biosignatures.'" *Id.* ¶ 182. Plaintiff alleges that this name is not a "true named professorship." *Id.* ¶ 185. After protest, Plaintiff conditionally agreed to the title of "Distinguished Professor of Biosignatures Discovery." *Id.* ¶ 186. Plaintiff asserts that, to this date, ASU has not provided her with "an appropriately named professorship consistent with its contractual commitment and generally recognized and accepted standards in academia" and that ASU's delay and refusal to provide her an appropriate name has negatively impacted her work in several ways. *Id.* ¶¶ 187–88. As ASU allegedly interfered with Plaintiff's ability to receive a named professorship, Plaintiff plausibly alleges her contract claims.

Additionally, Plaintiff's contract claims are not barred by the statute of limitations. A defendant may be equitably estopped from asserting a statute of limitations defense if the "defendant made specific promises, threats, or inducements to prevent the plaintiff from filing suit, those acts actually induced the plaintiff to forbear from filing suit, the acts reasonably caused the plaintiff to forbear filing suit timely, and the plaintiff filed the suit within a reasonable time after termination of the conduct warranting estoppel." *Viniegra v. Town of Parker Mun. Prop. Corp.*, 241 Ariz. 22, 26, 383 P.3d 665, 669 (Ct. App. 2016). Plaintiff's allegations that she took no action because she relied on ASU's promise that her named professorship was forthcoming provides plausible grounds for equitable estoppel.

### b.  Count IV

To state a claim for intentional misrepresentation, Plaintiff must allege:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; [and] (9) the hearer's consequent and

proximate injury.

*Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291–92, 229 P.3d 1031, 1033–34 (Ct. App. 2010).

> To state a claim for negligent misrepresentation, Plaintiff must allege that: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.

*KB Homes Tucson, Inc, v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 333, 340 P.3d 405, 412 n.7 (Ct. App. 2014).   Claims grounded in fraud, such as intentional and negligent misrepresentation, must abide by Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.  *See Medrano v. Carrington Foreclosure Servs. LLC*, No. CV-19-04988-PHX-DWL, 2019 WL 6219337, at *5 (D. Ariz. Nov. 21, 2019).   "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citation omitted) (alteration in original).   "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).   Further, a plaintiff must "set forth what is false or misleading about a statement, and why it is false."  *Id.*

### 1.  ASU Defendants

Plaintiff alleges that Defendant Crow made numerous promises to induce Plaintiff to accept a position at ASU.  (Doc. 1-3 at 16 ¶ 19.)  The Complaint lists several specific promises, which include promises of resources, and alleges that Crow "repeatedly assured Plaintiff that these resources would be made available to Plaintiff."  *Id.* ¶¶ 21–22.  Plaintiff also alleges that, at the time of her transition from Dean to Senior Scientist, Crow publicly promised to provide her $2 million in internal funding.  *Id.* ¶ 30.  Plaintiff alleges that Crow

knowingly made these false representations, and further alleges that Crow routinely "lured faculty and researchers to ASU on false and/or unfulfilled promises." *Id.*  ¶¶ 51, 212. Taken together, Plaintiff's allegations are sufficient to defeat a motion to dismiss on Count IV against Defendant Crow.

However, Plaintiff does not plausibly allege misrepresentation against Defendants Searle, Panchanathan, Page, LaBaer, or Deuser.  Although the Complaint identifies certain representations made by these Defendants, the Complaint does not indicate whether or how Plaintiff detrimentally relied on the representations.[3]

Furthermore, the ASU Defendants fail to show that the economic loss doctrine is a bar to Count IV.  The economic loss doctrine is a "common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010).  Arizona takes a narrow approach to the economic loss doctrine. *See Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 345, 306 P.3d 1, 2 (2013).  Arizona courts generally apply the doctrine in product liability and construction defect cases. *See Flagstaff*, 223 Ariz. at 323, 223 P.3d at 667.  "In cases where courts have applied the rule outside these contexts, the parties had detailed contracts allocating risk of loss and specifying remedies." *Kenneth Eisen & Assocs., Ltd. v. CoxCom, Inc.*, No. CV-18-02120-PHX-JJT, 2019 WL 669770, at *2 (D. Ariz. Feb. 19, 2019).  Here, the ASU Defendants do not address why the specificities of Plaintiff's contract justify the economic loss doctrine's application.  Accordingly, as argued, it does not bar Plaintiff's claim at this time.

### 2. AzTE/Skysong Defendants

---

[3] Plaintiff asserts that the ASU Defendants may also be held "personally liable where they participated in the tort, had knowledge amounting to acquiescence, or were guilty of negligence causing or contributing to the injury." (Doc. 19 at 14.) The Complaint alleges that Crow, Searle, Panchanathan, and Page "acting both separately and together [ ] made" certain misrepresentations and that Provost Phillips made certain misrepresentations at the direction of Crow and Searle.  (Doc.1-3 at 69 ¶¶ 213–14.)  The only adequately alleged misrepresentations made by an ASU Defendant are those by Crow, as described above. The Complaint does not indicate how any other ASU Defendant was involved in making those representations.  Additionally, the Complaint does not indicate how Crow or Searle were involved in Provost Phillips' misrepresentations.

Plaintiff alleges that Shangraw and Cheng "made the material and false representations set forth in paragraphs 28-30, 52-53, 60-70, 72, 87, 92, 96, [and] 174." (Doc. 1-3 at 70 ¶ 217.)  These paragraphs, however, do not identify misrepresentations made by Shangraw or Cheng.[4]  Accordingly, Count IV is dismissed as to Shangraw and Cheng.

### c.  Count V

To state a claim for unjust enrichment, a plaintiff must allege "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law."  *Carter v. Safeway Stores, Inc.*, 154 Ariz. 546, 549, 744 P.2d 458, 461 (Ct. App. 1987) (citation omitted).  A plaintiff may pursue an unjust enrichment claim "as an alternative theory of recovery in conjunction with a breach of contract claim, subject, however, to only one recovery."  *Lopez v. Musinorte Ent. Corp.*, 434 F. App'x. 696, 699 (9th Cir. 2011) (citing *Trustmark Ins. Co. v. Bank One*, 202 Ariz. 535, 542–43, 48 P.3d 485, 492–93 (Ct. App. 2002)).  Here, Plaintiff brings her unjust enrichment claim in conjunction with her breach of contract claim.  Accordingly, at this stage, it is permissible for Plaintiff to assert both.

### 1.  ASU Defendants

Plaintiff alleges that ASU failed to provide her the resources and funding to which it agreed while reaping the benefit of her services, including her research, student training, publications, and reputation.  (Doc. 1-3 at 71 ¶ 224.)  Plaintiff lists several specific examples of impoverishment, including ASU's reduction of the resources provided to her for research.  *Id.* ¶ 78.  Taken together, Plaintiff sufficiently alleges an enrichment and impoverishment.  Accordingly, the ASU Defendants' motion to dismiss Count V is denied.

### 2.  AzTE/Skysong Defendants

Plaintiff alleges that the AzTE/Skysong Defendants wrongfully omitted Plaintiff

---

[4]  Plaintiff asserts that Shangraw and Cheng can be held liable because they aided and abetted the ASU Defendants' misrepresentations.  (Doc. 20 at 11.)  However, the Complaint alleges that Shangraw and Cheng "made" the representations, not that they aided the ASU Defendants.

1    from an invention disclosure.  *Id.* ¶ 66.  Plaintiff further alleges that Shangraw and Cheng

2    continue to market this "misappropriated intellectual property."  *Id.* ¶ 67.  Based on these

3    actions, Plaintiff asserts that the AzTE/Skysong Defendants have been enriched by the

4    intellectual property she developed and that she has been impoverished by a deprivation of

5    certain intellectual property rights and income derived therefrom.  *Id.* ¶¶ 65, 229–30.

6    Drawing all reasonable inferences in favor of Plaintiff, Plaintiff plausibly states a claim for

7    unjust enrichment.

8        **d.  Count VII**

9        A.R.S. § 38-532 prohibits whistleblowing-related retaliation against an employee

10   who discloses information on a matter of public concern to a public body.  Section 533

11   further provides that this statute:

12        does not apply to an employee or former employee of a state university or
13        the board of regents which has in effect at the time a personnel action is taken
14        against the employee a rule or provision for the protection of its employees
         from reprisal for the disclosure of information to a public body, except that
15        the employee or former employee may appeal the final administrative
16        decision to the superior court.

17       ABOR Policy 6-914 provides administrative procedures for employees, like

18   Plaintiff, who believe they have been retaliated against for whistleblowing.  *See* (Doc. 12-

19   17.)  Accordingly, this statute is only applicable to Plaintiff if she is appealing a final

20   administrative decision.  As Plaintiff is not appealing an ASU administrative decision in

21   this suit and provides no assertions in her Complaint that pursuing these administrative

22   procedures would have been futile, Plaintiff is barred from bringing her whistleblowing

23   retaliation claim under Arizona statutory law.

24       Nor does Plaintiff have a private right of action under the Arizona Constitution.

25   Contrary to Plaintiff's assertion, Ariz. Const. art. XVIII, § 6 (the "Anti-Abrogation

26   Clause") does not create a private right to sue here.  The Anti-Abrogation Clause prohibits

27   the abrogation, not the regulation, of certain tort claims which trace their origins to the

28   common law.  *Cronin v. Sheldon*, 195 Ariz. 531, 538, 991 P.2d 231, 238 (1999); *see also*

*Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 106, 692 P.2d 280, 285 (1984) ("[T]he abrogation clause is implicated when the right of action is 'completely abolished.'").  Furthermore, the Court will not recognize a *Bivens*-like cause of action under the Arizona Constitution.  Neither party presents authority that Arizona recognizes a state *Bivens*-like claim.  Additionally, the existence of a state statutory remedy compels against a state *Bivens* action in any event.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1865 (2017) ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action.").  Accordingly, Count VII is dismissed as to both the ASU Defendants and the AzTE/Skysong Defendants.

### e.  Count VIII

To state a claim for tortious interference with a contractual relationship or business expectancy, a plaintiff must allege:

> (1) The existence of a valid contractual relationship or business expectancy;
> (2) knowledge of the relationship or expectancy on the part of the interferer;
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
> (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985).

### 1.  ASU Defendants

Plaintiff plausibly alleges that Defendants ABOR, Crow, Searle, Panchanathan, LaBaer, and Deuser intentionally interfered with her employment relationship and business expectancies.  Plaintiff alleges that Crow and Searle took the position that Plaintiff's sabbatical leave was not approved, which was contrary to Plaintiff's employment terms. (Doc. 1-3 at 37 ¶ 96.)  Plaintiff also alleges that ASU failed to provide her with certain resources in violation of her National Science Foundation grant's terms. *Id.* ¶ 136.  Plaintiff asserts that Crow, Searle, and Panchanathan "intended to delay, disrupt and interfere" her ongoing research projects by, for instance, mandating that Plaintiff relocate to inferior research space. *Id.* ¶¶ 137, 143.  Further, Plaintiff alleges her ongoing and future research

projects have been negatively impacted because Biodesign personnel, at the direction of LaBaer and Deuser, attempted to repair and caused significant damage to Plaintiff's equipment in 2020.  *Id.* ¶ 168.  Despite Plaintiff's insistence, Defendants have refused to repair this equipment.  *Id.* ¶¶ 168–69.  Drawing all reasonable inferences in favor of Plaintiff, the Complaint plausibly alleges intentional interference.[5]

Additionally, tortious interference with employment claims are not limited to a defendant who is a third party to the contractual relationship.  (Doc. 12 at 13.)  In *Wagenseller*, the Arizona Supreme Court held that the plaintiff could pursue a claim for tortious interference with her employment contract against her supervisor.  147 Ariz. at 388–89, 710 P.2d at 1043–44.  The court focused on whether the supervisor "improperly" interfered with the employment relationship.  *Id.* at 388, 710 P.2d at 1043.  In *Mintz v. Bell Atlantic Systems Leasing Intern., Inc.*, the Arizona Court of Appeals affirmed that a plaintiff may bring an interference claim in such an instance if the interfering party's action was improper.  183 Ariz. 550, 556, 905 P.2d 559, 565 (Ct. App. 1995); *see also Bernstein v. Aetna Life & Cas.*, 843 F.2d 359, 367 (9th Cir. 1988).  Plaintiff's tortious interference allegations, as partially described above, assert that the ASU Defendants acted inconsistently with Plaintiff's terms of employment.  *See* (Doc. 1-3 at 77 ¶ 254.) Accordingly, as Plaintiff plausibly alleges that the ASU Defendants acted improperly, Count VIII remains as to the ASU Defendants.

## 2.  AzTE/Skysong Defendants

Plaintiff alleges that, under the conditions of her employment, she had an expectation of sharing in revenue derived from inventions on which she was the Principal Investigator, including invention M15-170L.  *Id.* ¶¶ 61, 250.  Plaintiff asserts that two former ASU employees filed invention disclosure M15-170L with AzTE/Skysong without her approval and that AzTE/Skysong, at the direction of Shangraw and Cheng, failed to notify Plaintiff of the proposed disclosure.  *Id.* ¶¶ 61, 66.  Plaintiff further alleges that

---

[5]  Plaintiff refers to several paragraphs in stating her tortious interference claims against the ASU Defendants.  *Id.* at 77 ¶ 254.  These paragraphs do not refer to Defendants Page or Ritchie.  Accordingly, Count VIII is dismissed against Page and Ritchie in their individual capacities.

AzTE/Skysong later filed a provisional patent application without an adequate investigation to determine inventorship or notifying Plaintiff.  *Id.* ¶ 65.

Plaintiff's allegations that Shangraw and Cheng directed AzTE/Skysong to not notify Plaintiff about the proposed disclosure plausibly indicate that the AzTE/Skysong Defendants intentionally interfered with Plaintiff's ability to share in revenue from her invention.  Accordingly, Plaintiff plausibly states a claim for intentional interference with contract.

Plaintiff, however, fails to sufficiently allege tortious interference with business expectancy.  "A plaintiff must be able to 'identify a specific relationship with which the defendant interfered' to state a plausible claim for relief; the speculative hope of a business expectancy is not enough."  *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012) (quoting *Dube v. Likins*, 216 Ariz. 406, 414, 167 P.3d 93, 101 (Ct. App. 2007)).  Plaintiff asserts that the AzTE/Skysong Defendants interfered with her expectation of revenue and royalties "derived from Defendants' commercialization through contracts with third parties."  (Doc. 20 at 17.)  However, Plaintiff does not identify who these third parties are.  Accordingly, Plaintiff's allegations do not rise beyond the "mere hope" of a business expectancy.  *See Dube*, 216 Ariz. at 412, 167 P.3d at 99.  Therefore, to the extent Count VIII alleges tortious interference with business expectancy against the AzTE/Skysong Defendants, it is dismissed.

### f.  Count IX

Effective June 30, 2016, Plaintiff was demoted from her 12-month appointment as Senior Scientist to a 9-month appointment as a Professor.  (Doc. 1-3 at 65 ¶ 189.)  Prior to this demotion, Plaintiff had accrued 337.23 unused vacation hours.  *Id.* ¶ 191.  After the demotion, ASU informed Plaintiff that she would receive a payout of only 176 hours and that she forfeited the rest of her hours.  *Id.* ¶ 190.

Plaintiff fails to sufficiently allege a violation of the Arizona Wage Act, regardless of whether ASU or ABOR policy applies.  Under A.R.S. § 23-355, if an employer fails to pay wages due to an employee, the employee may recover "an amount that is treble the

amount of the unpaid wages."   Under ASU Academic Affairs Policies and Procedures Manual ("ACD") Policy 704-01, in effect in 2006 and 2010, "[a] cash payment for accrued vacation leave will be made at the eligible faculty or academic professional's current rate of pay upon termination. Payment for vacation leave will not exceed the amount earned for one year of service (i.e., 176 hours)."  (Doc. 19 at 24, 32.)  Similarly, ABOR Policy 6-803 provides that, "[u]pon termination of employment," an employee shall be paid for her accumulated vacation leave, not to exceed one year's accrual.  *Id.* at 37.  Plaintiff is still employed by ASU.  (Doc. 1-3 at 6 ¶ 3.)  Accordingly, under these policies, Plaintiff is not yet entitled to any payment for her accrued vacation leave.

Plaintiff is also not entitled to a payout beyond 176 hours if the later version of ACD Policy 704-01 applies.  That version states that a payment of accrued vacation leave will be made "upon termination from the position or any vacation-accruing appointment," not to exceed 176 hours.  (Doc. 12-18 at 3.)  As Plaintiff received a payout of 176 hours, ABOR did not violate this version of ACD 704-01 either.  Accordingly, Count IX is dismissed.

### g.  Counts X and XI

#### 1.  ASU Defendants

"The First Amendment shields a public employee if [s]he speaks as a citizen on a matter of public concern."  *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (quoting *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010)).  A claim that a government entity impermissibly retaliated against a plaintiff for the exercise of her First Amendment rights requires the plaintiff to show that (1) she spoke on a matter of public concern, (2) she spoke as a private citizen (not as a public employee), and (3) her speech was a substantial or motivating factor in the adverse employment action.  *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009).

"The public concern inquiry is purely a question of law."  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).  It looks at "the content, form, and context of a given statement, as revealed by the whole record."  *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). "Speech involves a matter of public concern when it can fairly be considered to relate to

'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick*, 461 U.S. at 146.) For instance, "misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern." *Id.* at 425. The speech in question need not be wholly devoted to issues of public concern to obtain First Amendment protection. *See Connick*, 461 U.S. at 149 (affording protection to a multi-party questionnaire that touched on matters of public concern). Nevertheless, "passing references to public safety [ ] incidental to the message conveyed weighs against a finding of public concern." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 711 (9th Cir. 2009) (internal quotations and citation omitted).

Plaintiff's First Amendment claims are based, in part, on the Letter. Although much of the Letter is focused on Plaintiff's personal issues, the Letter touches on matters of public concern. *See* (Doc. 1-3 at 24 ¶¶ 47–48.) For instance, the Letter discusses ASU's failure to properly account for private and public funds entrusted to ASU. (Doc. 12-19 at 8–9). Focusing only on the content of the Letter, the ASU Defendants do not address the form and context of the statements. As the Letter touches on matters of public concern, and the ASU Defendants do not present arguments on the remainder of the public concern test, it is not appropriate to dismiss Plaintiff's First Amendment claims at this stage.

Additionally, contrary to the ASU Defendants' assertions, the Complaint does allege adverse actions that took place after Plaintiff released the Letter. *See* (Doc. 1-3 ¶ 266.) Accordingly, the ASU Defendants' motion to dismiss Counts X and XI is denied.

### 2. AzTE/Skysong Defendants

The Complaint alleges that, following service of the Letter, the ASU Defendants, Shangraw, and Cheng retaliated against her in various ways. *Id.* ¶ 243. However, Plaintiff does not specifically allege that Shangraw or Cheng knew about or read the Letter. Plaintiff argues that the contents of the Letter, which refers to the AzTE/Skysong Defendants, (Doc. 12-19), several paragraphs in her Complaint, (Doc. 1-3 ¶¶ 12-14, 28-29, 47-53, 59-72, 90-92, 102-104, 242-243), and the interrelationship between AzTE/Skysong and ASU allows

the reasonable inference that Shangraw and Cheng knew about the contents of the Letter. Plaintiff's citations provide a speculative basis, at best, for finding that Shangraw and Cheng were aware of the Letter and its contents.  Accordingly, Plaintiff's First Amendment claims are dismissed against the AzTE/Skysong Defendants.

### h.  Count XII

> Title IX provides that:
> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).  The Ninth Circuit has not yet determined whether an employee of a federally-funded educational institution can pursue an employment discrimination claim under Title IX.  The First, Third, Fourth, and Sixth Circuits hold that employees may pursue Title IX employment discriminations claims, while the Fifth and Seventh Circuits hold that Title IX employment discrimination claims are preempted by Title VII.  *Jane Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545 (3d Cir. 2017) (allowing a private cause of action under Title IX), *and Ivan v. Kent State Univ.*, 92 F.3d 1185 (6th Cir. 1996) (same), *and Preston v. Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203 (4th Cir. 1994) (same), *and Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881 (1st Cir. 1988) (same), *with Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995) (finding that employees may not bring a Title IX suit because it would disrupt Title VII's "carefully balanced remedial scheme for redressing employment discrimination"), *and Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857 (7th Cir. 1996), *abrogated in part on other grounds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) (same).

The Court follows the holdings of the First, Third, Fourth, and Sixth circuits.  These holdings are consistent with Supreme Court precedent which reject Title VII as the exclusive remedy for employment discrimination actions.  *See Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975) ("Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not

1    limited to Title VII in his search for relief."). Further, Title IX's language, which refers to

2    "[n]o person," does not exclude employees from its breadth nor does it limit Title IX only

3    to individuals who cannot otherwise bring Title VII claims. *See Jackson v. Birmingham*

4    *Bd. of Educ.*, 544 U.S. 167, 175 (2005) ("Title IX is a broadly written general prohibition

5    on discrimination."). Accordingly, Plaintiff may pursue a Title IX discrimination claim

6    against ABOR. *See, e.g.*, *Kelley v. Iowa State Univ. of Sci. & Tech.*, 311 F. Supp. 3d 1051,

7    1059 (S.D. Iowa 2018); *Hunt v. Washoe Cnty. Sch. Dist.*, No. 3:18-cv-00501-LRH-WGC,

8    2019 WL 4262510, at *6–7 (D. Nev. Sept. 9, 2019).

9        Furthermore, Plaintiff plausibly alleges she was discriminated against because of

10   her sex. Specifically, Plaintiff alleges that her expulsion as a Biodesign Center was

11   discriminatory on the basis of sex because another Center Director, Professor Sid Hecht,

12   and his research center were allowed to remain as a Biodesign Center "despite having a

13   lower performance metric rating than Plaintiff." (Doc. 1-3 ¶ 160.) Accordingly, the ASU

14   Defendants' motion to dismiss Count XII is denied.

### i.  Count XIII

16       A.R.S. § 39-121.02(a) provides a cause of action for "[a]ny person who has

17   requested to examine or copy public records pursuant to this article, and who has been

18   denied access to or the right to copy such records." A.R.S. § 39-121.01(e) clarifies that

19   "[a]cess to a public record is deemed denied if a custodian fails to *promptly* respond to a

20   request for production." (emphasis added).

21       The ASU Defendants assert that Count XIII is moot because ASU provided the

22   requested documents. (Doc. 12 at 18.) Plaintiff does not deny that ASU provided the

23   documents. (Doc. 19 at 18.) Accordingly, Count XIII is moot to the extent that it requests

24   ASU to produce the requested public records. (Doc. 1-3 at 85 ¶ 303.)

25       The remainder of Count XIII requests an award of attorneys' fees. A.R.S. § 39-

26   121.02(b) provides that a court may award attorney fees "if the person seeking public

27   records has substantially prevailed. Plaintiff asserts that ASU's failure to provide the

28   documents after more than 8 months is a denial of her request. (Doc. 1-3 ¶ 302.) As the

question of whether Plaintiff was denied access, as defined in § 39-121.01(e), is still at issue, the remainder of Count XIII is not moot.[6]

### j. Leave to Amend

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014). Plaintiff may amend her Complaint as to the counts dismissed.

Accordingly,

**IT IS THEREFORE ORDERED** that Arizona Board of Regents, Michael Crow, Robert Page, Mark Searle, Barry Graham Ritchie, Sethuraman Panchanathan, Joshua LaBaer, and Tamara Deuser's Motion to Dismiss (Doc. 12) is **GRANTED** in part and **DENIED** in part as follows:

1. Counts VII and IX are dismissed.

2. The motion is denied as to Counts V, X, XI, and XII.

3. Counts I-III and VI are dismissed to the extent that they are based on non-renewal of Plaintiff's administrative appointments. Counts I, II, and VI are further dismissed to the extent they are based on Plaintiff's sabbatical. The remainder of Counts I-III and VI remain.

4. Count IV is dismissed against Defendants Searle, Panchanathan, Page, LaBaer, and Deuser in their official and personal capacities. The remainder of Count IV remains.

5. Count VIII is dismissed against Defendants Page and Ritchie in their individual capacities. The remainder of Count VIII remains.

6. Count XIII is dismissed as moot to the extent it requests that ASU produce the

---

[6] The ASU Defendants also argue that, under Arizona law, "a claim against an employee [in their individual capacity] is appropriate only if the employee was not acting in the course and scope of their employment." (Doc. 12 at 17.) "Whether an employee's tort is within the scope of employment is generally a question of fact." *Smith v. Am. Exp. Travel Related Servs. Co.*, 179 Ariz. 131, 136, 876 P.2d 1166, 1171 (Ct. App. 1994). Without more information about each of the individual ASU Defendants' work responsibilities, it is premature to dismiss the ASU Defendants in their individual capacities.

1    requested public records.  The remainder of Count XIII remains.

2    **IT IS FURTHER ORDERED** that Motion to Dismiss Complaint by Defendants Rick Shangraw, J.r., Augustine Cheng, and Arizona Science and Technology Enterprises (now known as Skysong Innovations, LLC) (Doc. 13) is **GRANTED** in part and **DENIED** in part as follows:

1. Counts IV, VII, X, and XI are dismissed.

2. The motion is denied as to Count V.

3. Count VIII is dismissed to the extent that it alleges tortious interference with business expectancy.  The remainder of Count VIII remains.

Dated this 3rd day of August, 2021.

G. Murray Snow
Chief United States District Judge